United States District Court
Southern District of Texas
**FILED**

MAR 2 5 2010

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON TEXAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | **H-10- 185** |
| | § | |
| V. | § | CRIMINAL NO. H-10-_____ |
| | § | |
| VINCENT WALLACE ALDRIDGE | § | |
| TORI ELYSE ALDRIDGE, and | § | |
| GILBERT BARRY ISGAR | § | |

## INDICTMENT

### COUNT ONE
### (Conspiracy - Title 18, U.S.C. §1349)

At all times material to this Indictment:

    A. <u>Defendants</u>

1.    VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE, and GILBERT BARRY ISGAR operated in the Houston, Texas area under various business names. VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE used the name Aldridge & Associates and First Southwestern Title Company of America (First Southwestern Title Company). TORI ELYSE ALDRIDGE additionally used the business name First Quantum Funding. GILBERT BARRY ISGAR used the business name Waterford Custom Homes (Waterford).

    B. <u>Residential Real Estate Closings</u>

2.    The Transaction that is the subject of a residential real estate closing ("Closing") involves the purchase and sale of real property between two parties, the

1

"Buyer" and the "Seller". The Buyer is an individual or entity who, in a "Cash Transaction," provides his own funds to pay 100% of the sales price, or, in a "Loan Transaction," obtains the funding from a lending institution (the "Lender"), to purchase the real estate, which has approved the Buyer/Borrower (hereinafter "Borrower") for a residential mortgage loan for up to 100% of the sales price. The Seller is an individual or entity who owns the property that is the subject of the transaction.

3.     The documents used to apply for a real estate mortgage loan are usually collected by loan officers and loan processors and transmitted to the Lender by United States mail and/or by commercial interstate carrier such as Federal Express and DHL Worldwide Express and/or via facsimile. These documents include, but are not limited to:

       a. The Residential Uniform Loan Application executed by the Borrower
       b. Borrower's credit report
       c. Verification of Employment
       d. Verification of Rent or Mortgage
       e. Lease agreements

4.     The closing of the real estate transaction is conducted by a Title Company Escrow Agent or Closing Agent. The Title Company transmits documents prepared for the property closing to the Lender by facsimile as well as by United States mail and/or by commercial interstate carrier such as Federal Express. The Lender funds the residential loans through a wire transfer from the Lender's bank to the Title Company's bank account. After the loans are funded, the Title Company disburses the loan proceeds.

### C. The Conspiracy

5.     From in or about August 2004 and continuing through on or about June 22,

2005, in the Southern District of Texas, and elsewhere, the defendants,

VINCENT WALLACE ALDRIDGE,
TORI ELYSE ALDRIDGE, and
GILBERT BARRY ISGAR ,

did knowingly conspire and agree together and with others known and unknown to the

grand jury to commit the following offenses against the United States:

a.     To knowingly devise and intend to devise a scheme and artifice to
defraud, and for obtaining money and property by means of false and
fraudulent pretenses, representations, and promises, and to knowingly use
and cause to be used the United States mails and private and commercial
interstate carriers for the purpose of executing the scheme and artifice to
defraud, in violation of Title 18, United States Code, Section 1341;

b.     To knowingly devise and intend to devise a scheme and artifice to
defraud, and for obtaining money and property by means of false and
fraudulent pretenses, representations, and promises, and to knowingly use
and cause to be used interstate wire communications facilities in carrying
out the scheme to defraud, in violation of Title 18, United States Code,
Section 1343;

3

### D. Manner and Means of the Scheme

It was a part of the conspiracy that:

6.     VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE, and their coconspirators and agents would and did locate real estate (the "Properties") in the Houston, Texas area, frequently Properties for sale by developers such as GILBERT BARRY ISGAR.

7.     VINCENT WALLACE ALDRIDGE and his coconspirators and agents would and did recruit, solicit, compensate and cause to be compensated individuals with good credit to act as "Borrowers" in applications for residential mortgage loans to purchase one or more of the Properties.

8.     VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE and their coconspirators and agents knew and intended that each Borrower would and did use and allow his or her name and other personal and financial information to be used and submitted to a "Lender" for the purpose of pretending and falsely representing that the Borrower was able to meet the financial obligations of the loan and had the incentive to do so.

9.     VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE and their coconspirators and agents would and did cause to be completed Uniform Residential Loan Applications in the names of the Borrowers in an attempt to obtain financing of the Property's sales price.  The applications included false representations including the

4

Borrower's plan to occupy the Property as their primary residence, a pretense and false representation that VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE and their coconspirators knew was material to the Lenders' decisions to grant and fund the loans.

10.    VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE and their coconspirators and agents would and did prepare, authorize, disseminate, transmit and cause to be prepared, authorized, disseminated and transmitted through the United States mail and commercial interstate carriers and through interstate wire communications, to individuals and entities, including Lenders and their agents, false and fraudulent statements and other information, including but not limited to the ability and incentive of each Borrower to repay the loan, which the Defendants and their coconspirators knew and had reason to believe would be material to the Lender's decision to fund the mortgage loan and under what conditions.

11.    VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR would and did cause the title company handling the closing of the residential real estate transaction to disburse fraudulently-induced loan proceeds from the escrow accounts of the title companies to various individuals and entities.

12.    GILBERT BARRY ISGAR and other coconspirators would inflate the sales price of properties to allow VINCENT WALLACE ALDRIDGE to receive funds disguised as attorney's fees in addition to the normal settlement charges.

5

13.    VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and

GILBERT BARRY ISGAR and other coconspirators would and did induce Lenders to

fund fraudulently obtained residential mortgage loans in the total amount of

$3,710,500.00.

## OVERT ACTS

In furtherance of the conspiracy described in Count One and to effect the objects

thereof, the defendants named therein and other persons both known and unknown to the

grand jury, performed or caused the performance of one or more of the following Overt

Acts, among others not described herein, in the Southern District of Texas and elsewhere

on or about the following dates:

**1415 Birdsall, Houston, Texas**

(1)    On or about March 22, 2005 and March 25, 2005, VINCENT WALLACE

ALDRIDGE , TORI ELYSE ALDRIDGE and their coconspirators caused a false

Uniform Residential Loan Application (Application) to be completed and submitted to

Argent Mortgage Company on behalf of S.S. in which the following misrepresentations

were made:

A.    The property was to be S.S.'s primary residence per the Application and

accompanying occupancy affidavit, when in fact, S.S. had no intention of living at the

property and thought he was purchasing it as an investment.

B.    S.S. was still legally married and not unmarried as stated on the Application.

C.    The Application listed 1003 Beachcomber Lane, Houston, Texas as S.S.'s

primary address, which was not his address at that time.

6

D.     The Application stated S.S.'s employment as the Executive Vice President of Dubz Plus with a monthly salary of $16,000 (equivalent of $192,000 per year), when in fact, S.S. actually worked for Marathon Oil and made approximately $100,000 per year.

E.     Net rental income of $1,090 was listed for the property that S.S. owned at 1003 Beachcomber Lane, Houston, Texas, when in fact, S.S. was not renting this property and, therefore, not receiving any rental income.

F.     A Bank of America account with a value of $10,000 was listed under the Assets section of the Application, when in fact, S.S. did not have a Bank of America account.

(2)     March 29, 2005, VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE, GILBERT BARRY ISGAR and coconspirators caused Argent Mortgage Company to wire $275,217.88 and $68,946.96 (total $344,164.84) to First Southwestern Title Company escrow account at Comerica Bank in order to fund the loan.

(3)     On or about March 29, 2005, VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and their coconspirators caused an amendment to the sales contract to be included in the title file which stipulated, "Seller to pay $60,000 to a contractor of Buyer's choice at closing." This amendment did not appear in the lender file.

(4)     March 29, 2005, VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR caused First Southwestern Title Company to disburse a $66,450.12 check at closing to the Aldridge & Associates IOLTA, which included a $60,000.00 split disbursement with the seller.

**1411 Birdsall, Houston, Texas**

(5)     On April 22, 2005, VINCENT WALLACE ALDRIDGE and TORI ELYSE

ALDRIDGE caused a false Uniform Residential Loan Application (Application) to be

submitted to Argent Mortgage Corporation on behalf of M.S. in which the following

misrepresentations were made:

A.  The property was to be M.S.'s primary residence, when in fact, M.S. had no

intention of living at the property.

B.  The Application stated M.S.'s employment as an underwriter for Aetna with a

monthly salary of $12,000 (equivalent of $144,000 per year), when in fact, M.S. made

approximately $59,000 per year.

C.  The Application stated M.S. had a life insurance policy with a $150,000 net

cash value, when in fact, M.S. did not have such a life insurance policy.

(6)     April 14, 2005, VINCENT WALLACE ALDRIDGE and TORI ELYSE

ALDRIDGE caused a letter to be faxed from First Southwestern Title Company to the

lender which stated M.S. worked at Aetna as an underwriter and made $12,000 per

month, when in fact, M.S. made approximately $5,000 per month.

(7)     April 18, 2005, VINCENT WALLACE ALDRIDGE and TORI ELYSE

ALDRIDGE caused a letter to be faxed from First Southwestern Title Company to the

lender which stated M.S. recently had her credit pulled for re-financing a loan, when in

fact, M.S. had her credit pulled for purchasing another property.

(8)     April 25, 2005, VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE

and GILBERT BARRY ISGAR caused Argent Mortgage Company to wire $292,771.18

and $71,888.16 (total $364,659.34) to First Southwestern Title Company escrow account at Comerica Bank in order to fund the loan.

(9) April 25, 2005, VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR caused First Southwestern Title Company to disburse a $75,442.83 check at closing to the Aldridge & Associates IOLTA, which included a $75,335.00 split disbursement with the seller.

**1417 Birdsall, Houston, Texas**

(10) On April 26, 2005, VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE caused a false Uniform Residential Loan Application (Application) to be submitted to Argent Mortgage Company on behalf of L.K. in which the following misrepresentations were made:

A. The property was to be L.K.'s primary residence, when in fact, L.K. had no intention of living at the property.

B. The Application stated L.K.'s employment as a self-employed Consultant for Fresh Start Financial with a monthly salary of $20,000 (equivalent of $240,000 per year), when in fact, L.K. made approximately $500 per month (equivalent of $6,000 per year) at Fresh Start Financial around the time she purchased the properties.

(11) April 25, 2005, VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE caused a letter to be faxed from First Southwestern Title Company to the lender which stated L.K. had not applied for credit in the last 60 days, when in fact, L.K. had applied for credit within the last 60 days.

(12)     April 25, 2005, VINCENT WALLACE ALDRIDGE and TORI ELYSE
ALDRIDGE caused a letter to be faxed from First Southwestern Title Company to the
lender which stated L.K. made $20,000 per month at Fresh Start Financial, when in fact,
L.K. made $500 per month.

(13)     On or about April 25, 2005, VINCENT WALLACE ALDRIDGE and TORI
ELYSE ALDRIDGE caused a copy of check  #1920 written on L.K.'s Wells Fargo
account to be included in the lender file. The same check represented the earnest money
deposit for three separate properties.

(14)     April 26, 2005, VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE
and GILBERT BARRY ISGAR caused Argent Mortgage Company to wire $292,831.15
and $71,906.80 (total $364,737.95) to First Southwestern Title Company escrow account
at Comerica Bank in order to fund the loan.

(15)     April 26, 2005, VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE
and GILBERT BARRY ISGAR caused First Southwestern Title Company to disburse a
$79,471.68 check at closing to the Aldridge & Associates IOLTA, which included a
$79,103.18 split disbursement with the seller.

**1421 Birdsall, Houston, Texas**

(16)     On April 29, 2005, VINCENT WALLACE ALDRIDGE and TORI ELYSE
ALDRIDGE caused a false Uniform Residential Loan Application (Application) to be
submitted to Finance America LLC on behalf of M.S. in which the following
misrepresentations were made:

A. The property was to be M.S.'s primary residence, when in fact, M.S. had no intention of living at the property.

B. The Application stated M.S.'s employment as an underwriter for Aetna with a monthly salary of $12,000 (equivalent of $144,000 per year), when in fact, M.S. made approximately $59,000 per year.

C. The Application stated M.S. had a life insurance policy with a $150,000 net cash value, when in fact, M.S. did not have such a life insurance policy.

D. The Asset and Liabilities Section of the Application, did not list M.S.'s ownership and debt related to her purchase of 1411 Birdsall, when in fact, she had purchased that property prior to her purchase of this property.

(17)   April 25, 2005, VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE caused a false residential lease agreement to be submitted. The lease stated that M.S. was leasing her home located at 3607 Elmwood Drive, Fresno, Texas, when in fact, that address was M.S.'s primary residence.

(18)   April 29, 2005, VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR caused Finance America LLC to wire $362,561.40 to First Southwestern Title Company escrow account at Comerica Bank in order to fund the loan.

(19)   May 2, 2005, VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR caused First Southwestern Title Company to disburse a $79,200.71 check at closing to the Aldridge & Associates IOLTA, which included the split disbursement with the seller.

(20)   On April 26, 2005 and May 3, 2005, VINCENT WALLACE ALDRIDGE caused
$10,000.00 to be wired, on each date, from his Aldridge & Associates IOLTA account to
M.S.'s bank account as her payment in the scheme for the two properties she purchased.

**1419 Birdsall, Houston, Texas**

(21)   On April 14, 2005 and May 5, 2005, VINCENT WALLACE ALDRIDGE and
TORI ELYSE ALDRIDGE caused a false Uniform Residential Loan Application
(Application) to be submitted to Finance America LLC on behalf of L.K. in which the
following misrepresentations were made:

A.   The property was to be L.K.'s primary residence, when in fact, L.K. had no
intention of living at the property.

B.   The Application stated L.K.'s employment as a self-employed Consultant for
Fresh Start Financial with a monthly salary of $20,000 (equivalent of $240,000 per year),
when in fact, L.K. made approximately $500 per month (equivalent of $6,000 per year) at
Fresh Start Financial around the time she purchased the properties.

C.   The Assets and Liabilities section of the Application did not list the ownership
and debt related to L.K.'s purchase of 1417 Birdsall, when in fact, King purchased 1417
Birdsall prior to closing on this property.

(22)   On or about May 5, 2005, VINCENT WALLACE ALDRIDGE and TORI ELYSE
ALDRIDGE caused a copy of check #1920 written on L.K.'s Wells Fargo account to be
included in the lender file. The same check represented the earnest money deposit for
three separate properties.

(23)    May 5, 2005, VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE

and GILBERT BARRY ISGAR caused Finance America LLC to wire $289,607.20 and

$72,086.92 (total $361,694.12) to First Southwestern Title Company escrow account at

Comerica Bank in order to fund the loan.

(24)    May 6, 2005, VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE

and GILBERT BARRY ISGAR caused First Southwestern Title Company to disburse a

$79,265.00 check at closing to the Aldridge & Associates IOLTA, which included a

$79,140.00 split disbursement with the seller.

**5805 Maxie, Houston, Texas**

(25)    On May 3, 2005, TORI ELYSE ALDRIDGE caused a credit report to be generated

L.K.'s name and social security number.

(26)    On May 5, 2005, VINCENT WALLACE ALDRIDGE and TORI ELYSE

ALDRIDGE caused a false Uniform Residential Loan Application (Application) to be

submitted to First Magnus Financial Corporation on behalf of L.K. in which the following

misrepresentations were made:

A. The property was to be L.K.'s primary residence, when in fact, L.K. had no

intention of living at the property.

B. The Application stated L.K.'s employment as a self-employed consultant for

Fresh Start Financial with a monthly salary of $27,000 (equivalent of $324,000 per year),

when in fact, L.K. made approximately $500 per month (equivalent of $6,000 per year) at

Fresh Start Financial around the time she purchased the properties.

13

C. The Application stated that L.K. had $140,000 on deposit in her Wells Fargo banks accounts, when in fact she had approximately $20,000 in her account.

D. The Application stated L.K. had a life insurance policy with a $500,000 net cash value, when in fact, L.K. did not have such a life insurance policy.

E. The Asset and Liabilities Section of the Application, did not list L.K.'s ownership and debt related to her purchase of 1417 Birdsall, when in fact, she had purchased that property prior to her purchase of this property.

(27)    May 3, 2005, VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE caused a letter to be faxed from First Southwestern Title Company to the lender which stated L.K.'s credit had been pulled several times by lenders trying to get her to refinance her rental property and that no new credit or mortgages resulted from these lenders, when in fact, she acquired mortgages for 1417 Birdsall.

(28)    On or about May 6, 2005, VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE caused a copy of check #1920 written on L.K.'s Wells Fargo account to be included in the lender file. The same check represented the earnest money deposit for three separate properties.

(29)    May 6, 2005, VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR caused First Magnus Financial Corporation to wire $289,025.00 and $72,653.75 (total $361,678.75) to Aldridge & Associates' First Southwestern Title Company escrow account at Comerica Bank in order to fund the loan.

(30)    May 6, 2005, VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR caused First Southwestern Title Company to disburse a

$69,545.00 check at closing to the Aldridge & Associates IOLTA, which included a

$69,425.00 split disbursement with the seller.

(31)    May 12, 2005, VINCENT WALLACE ALDRIDGE caused $30,000.00 to be

wired from his Aldridge & Associates IOLTA account to L.K.'s bank account as her

payment in the scheme for the three properties she purchased.

    All in violation of Title 18, United States Code, Section 1349.

**WIRE FRAUD COUNTS**

### COUNTS TWO through TWELVE
### (Title 18, U.S.C. §1343 and 2)

1.    The Grand Jury realleges and incorporates by reference, as though fully set

forth herein, the allegations contained in sections A , B and D as set out in Count One of the

indictment.

2.    On or about the following dates in the Southern District of Texas, the named

defendants, aiding and abetting one another and others known and unknown to the grand

jury, did knowingly devise, intend to devise, and participate in a scheme and artifice to

defraud and to obtain money and property by means of false and fraudulent pretenses,

representations and promises, and for the purpose of executing the scheme and artifice to

defraud, and to obtain money by means of false and fraudulent pretenses and representations

did cause to be transmitted in interstate commerce, by means of a wire communication, loan

funds from the bank account of the Lender into the bank account of the Title Company as

follows in Counts Two through Twelve:

| COUNT | DATE | DEFENDANT | TRANSMISSION DESCRIPTION |
|---|---|---|---|
| Two | March 29, 2005 | VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR | Wire transfer of $275,217.88 from Argent Mortgage Company to First Southwestern Title Company to purchase 1415 Birdsall, Houston, Texas |
| Three | March 29, 2005 | VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR | Wire transfer of $68,946.96 from Argent Mortgage Company to First Southwestern Title Company to purchase 1415 Birdsall, Houston, Texas |
| Four | April 25, 2005 | VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR | Wire transfer of $292,771.18 from Argent Mortgage Company to First Southwestern Title Company to purchase 1411 Birdsall, Houston, Texas |
| Five | April 25, 2005 | VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR | Wire transfer of $71,888.16 from Argent Mortgage Company to First Southwestern Title Company to purchase 1411 Birdsall, Houston, Texas. |
| Six | April 26, 2005 | VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR | Wire transfer of $292,831.15 from Argent Mortgage Company to First Southwestern Title Company to purchase 1417 Birdsall, Houston, Texas. |
| Seven | April 26, 2005 | VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR | Wire transfer of $71,906.80 from Argent Mortgage Company to First Southwestern Title Company to purchase 1417 Birdsall, Houston, Texas. |
| Eight | April 29, 2005 | VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR | Wire transfer of $362,561.40 from Finance America LLC to First Southwestern Title Company to purchase 1421 Birdsall, Houston, Texas. |

16

| Nine | May 5, 2005 | VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR | Wire transfer of $289,607.20 from Finance America LLC to First Southwestern Title Company to purchase 1419 Birdsall, Houston, Texas. |
| Ten | May 5, 2005 | VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR | Wire transfer of $72,086.92 from Finance America LLC to First Southwestern Title Company to purchase 1419 Birdsall, Houston, Texas. |
| Eleven | May 6, 2005 | VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR | Wire transfer of $289,025.00 from First Magnus Financial Corporation to First Southwestern Title Company to purchase 5805 Maxie, Houston, Texas. |
| Twelve | May 6, 2005 | VINCENT WALLACE ALDRIDGE, TORI ELYSE ALDRIDGE and GILBERT BARRY ISGAR | Wire transfer of $72,653.75 from First Magnus Financial Corporation to First Southwestern Title Company to purchase 5805 Maxie, Houston, Texas. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## MONEY LAUNDERING COUNTS

### COUNT THIRTEEN
### (Title 18, U.S.C. §1956(h))

A.    The Grand Jury realleges and incorporates by reference, as though fully set forth herein, the allegations contained in sections A and C as set out in Count One of the indictment.

B.    From in or about August 2004 and continuing through, on or about June 22, 2005, in the Southern District of Texas, and elsewhere, and within the jurisdiction of this Court,

17

VINCENT WALLACE ALDRIDGE,
TORI ELYSE ALDRIDGE, and
GILBERT BARRY ISGAR ,

defendants herein, did unlawfully, knowingly and intentionally combine, conspire,

confederate and agree with each other and others known and unknown to the grand jury,

to knowingly engage in and attempt to engage in monetary transactions within the United

States in criminally derived property that is of a value greater than $10,000 and is derived

from specified unlawful activity, specifically, wire fraud, in violation of Title 18, United

States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS FOURTEEN THROUGH NINETEEN
## (Title 18, U.S.C. §§ 1957 and 2)

1.    The Grand Jury realleges and incorporates by reference, as though set forth in

full herein, the allegations set forth in Sections A, B and D of Count One of this

Indictment.

2.    On or about the following dates, in the Southern District of Texas and

elsewhere, the defendants named below, aiding and abetting one another, did knowingly

engage in and attempt to engage in monetary transactions within the United States, that is,

depositing or causing money to be deposited into Aldridge and Associates IOLTA

Account at Comerica Bank,  in criminally derived property that is of a value greater than

$10,000 and is derived from specified unlawful activity, specifically, wire fraud, a

violation of Title 18, United States Code, Section 1343:

18

| COUNT | DATE | DEFENDANT | FINANCIAL TRANSACTION |
|---|---|---|---|
| Fourteen | March 29, 2005 | VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE | Check drawn on the account of First Southwestern Title Company in the amount of $66,450.12, which contained a $60,000.00 split disbursement, and deposited into the account of Aldridge and Associates IOLTA Account at Comerica Bank. |
| Fifteen | April 25, 2005 | VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE | Check drawn on the account of First Southwestern Title Company in the amount of $75,442.83, which contained a $75,335.00 split disbursement, and deposited into the account of Aldridge and Associates IOLTA Account at Comerica Bank. |
| Sixteen | April 27, 2005 | VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE | Check drawn on the account of First Southwestern Title Company in the amount of $79,471.68, which contained a $79,103.18 split disbursement, and deposited into the account of Aldridge and Associates IOLTA Account at Comerica Bank. |
| Seventeen | May 2, 2005 | VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE | Check drawn on the account of First Southwestern Title Company in the amount of $79,200.71 and deposited into the account of Aldridge and Associates IOLTA Account at Comerica Bank. |
| Eighteen | May 9, 2005 | VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE | Check drawn on the account of First Southwestern Title Company in the amount of $79,265.00, which contained a $79,140.00 split disbursement, and deposited into the account of Aldridge and Associates IOLTA Account at Comerica Bank. |

| Nineteen | May 9, 2005 | VINCENT WALLACE ALDRIDGE and TORI ELYSE ALDRIDGE | Check drawn on the account of First Southwestern Title Company in the amount of $69,545.00, which contained a $69,425.00 split disbursement, and deposited into the account of Aldridge and Associates IOLTA Account at Comerica Bank. |

In violation of Title 18, United States Code, Section 1957 and 2.

## NOTICE OF FORFEITURE
## [18 U.S.C. § 982(a)(2)(A)]

Pursuant to Title 18, United States Code, Section 982(a)(2)(A), upon conviction of an offense in violation of Title 18, United States Code, Section 1343, including a conspiracy to commit said offense, as charged in Counts 1 - 12, the defendants

VINCENT WALLACE ALDRIDGE (Counts 1-12),
TORI ELYSE ALDRIDGE (Counts 1-12), and
GILBERT BARRY ISGAR (Counts 1-12) ,

shall forfeit to the United States of America all property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations. The property to be forfeited includes, but is not limited to, a money judgment in the amount of approximately $3,710,500.00 for which the defendants may be jointly and severally liable.

In the event that the property subject to forfeiture as a result of any act or omission of the defendant:

a.    cannot be located upon exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

20

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

## NOTICE OF FORFEITURE
### [18 U.S.C. § 982(a)(1)]

Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Sections 1956 and 1957, including a conspiracy to commit such offense, as charged in Counts 13 - 19, the defendants

VINCENT WALLACE ALDRIDGE (Counts 13-19),
TORI ELYSE ALDRIDGE (Counts 13-19), and
GILBERT BARRY ISGAR (Count 13),

shall forfeit to the United States of America all property, real or personal, involved in such offenses, or all property traceable to such property. The property to be forfeited includes, but is not limited to, a money judgment in the amounts listed below:

| Count Thirteen | $ 442,203.89 |
|---|---|
| Count Fourteen | $ 60,000.00 |
| Count Fifteen | $ 75,335.00 |
| Count Sixteen | $ 79,103.18 |
| Count Seventeen | $ 79,200.71 |
| Count Eighteen | $ 79,140.00 |

21

Count Nineteen    $    69,425.00

for which the defendants may be jointly and severally liable.

In the event that the property subject to forfeiture as a result of any act or omission of the defendant:

a.    cannot be located upon exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL:

ORIGINAL SIGNATURE ON FILE

_____
FOREPERSON OF THE GRAND JURY

JOSE ANGEL MORENO
UNITED STATES ATTORNEY

By: _____
Jennifer B. Lowery
Assistant United States Attorney

22